UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHEL URRA DORTA,

    Petitioner,

v.                                        Case No.:  2:26-cv-217-SPC-DNF

MATTHEW MORDANT *et al.*.

    Respondents,
_____/

**OPINION AND ORDER**

Before the Court are Michel Urra Dorta's Petition for Writ of Habeas Corpus (Doc. 1), the federal government's response (Doc. 11), and Urra Dorta's reply (Doc. 12). For the below reasons, the Court grants the petition.

**A. Background**

Urra Dorta is a native and citizen of Cuba who entered the United States in 2022, to seek asylum. The Department of Homeland Security ("DHS") apprehended Urra Dorta, served him with a Notice to Appear ("NTA") and released him under an order of recognizance. Since then, Urra Dorta has complied with all conditions of release, applied for asylum and work authorization, and appeared at all scheduled removal proceedings.

Urra Dorta's master calendar hearing was set for December 1, 2025. When Urra Dorta reported to immigration court for the hearing, DHS dismissed the removal proceedings, arrested him as he left the courtroom, and

designated him for expedited removal. He is currently detained at Alligator Alcatraz.

Urra Dorta claims his detention violates the Immigration and Nationality Act ("INA") and his Fifth Amendment rights because he is not eligible for expedited removal, and because DHS re-detained him without notice or an opportunity to be heard. Urra Dorta asks the Court to order his release and to void the expedited removal order. The respondents argue the Court lacks jurisdiction to consider Urra Dorta's claims.

**B. Legal Framework for Expedited Removal**

The INA establishes two procedures for removing noncitizens from the country. The first process—sometimes called a section 240 proceeding—begins when DHS issues the noncitizen a NTA. It involves an evidentiary hearing before an immigration judge, and it provides the noncitizen an opportunity to apply for asylum. Noncitizens seeking asylum are entitled to due process under the Fifth Amendment. DHS may release the noncitizen into the country on parole while the process plays out, but only if the noncitizen demonstrates "that the release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceedings." 8 C.F.R. § 1236.1(c)(8).

Expedited removal is the second process. It allows immigration officers to remove noncitizens "without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). Because expedited removal affords substantially fewer

protections to the noncitizen's rights, the INA limits its applicability in two ways. First, noncitizens may be eligible for expedited removal "only if they are inadmissible on the basis that they either lack proper entry documents or falsified or misrepresented their application for admission." *Coalition for Humane Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 61, 2025 WL 2192986, at *5 (D.D.C. 2025) (citing 8 U.S.C. §§ 1225(b)(1)(A)(i) and 1182(a)(6)(C), (a)(7)). "Among that set, only two categories of noncitizens are eligible for expedited removal: (1) noncitizens 'arriving in the United States,' and (2) noncitizens who 'ha[ve] not been admitted or paroled into the United States' and cannot affirmatively show that they have been 'physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(i)–(iii)).

On January 23, 2025, Acting DHS Secretary Benjamine Huffman issued a memorandum instructing immigration officials to consider the expedited removal of "any alien DHS is aware of who is amenable to expedited removal but to whom expedited removal has not been applied[.]" Benjamine C. Huffman, Acting DHS Secretary, *Guidance Regarding How to Exercise Enforcement Discretion* (Jan. 23, 2025). The next day, DHS published a notice expanding the application of expedited removal. Office of the Secretary, DHS, *Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139.

In its implementation of the new policy, "the Government began targeting for expedited removal people already in section 240 removal proceedings, many of whom are pursuing asylum and other collateral relief." *Make the Road New York v. Noem*, 805 F. Supp. 3d 139, 152-53, 2025 WL 2494908, at *5 (D.D.C. 2025). The D.C. District Court described a common pattern:

> [W]ith DHS first moving orally (without any advance notice) to dismiss the individual's pending section 240 proceedings, then arresting the individual at the courthouse immediately upon the dismissal of their section 240 proceedings, and then, finally, placing the individual in expedited removal proceedings through which they can be deported far more quickly, and with far less process, than they would have been in section 240 proceedings.

*Id.*

**C. Jurisdiction**

The respondents argue the INA divests the Court of jurisdiction over Urra Dorta's petition. They first point to a provision that bars courts from hearing certain claims. It states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  This jurisdictional bar is narrow.  "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"  *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that technically can be said to 'arise from' the three listed actions of the Attorney General.  Instead, we read the language to refer to just those three specific actions themselves."). "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged."  *Canal A Media Holding, LLC v. United States Citizenship and Immigration Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020).

The respondents also raise the INA's "zipper clause," which states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court should have jurisdiction, by habeas corpus under section 2241 or title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9).  The zipper clause only applies to claims requesting review of a removal order.  *See Madu v. U.S. Attorney Gen.*, 470 F.3d 1362, 1365 (11th Cir. 2006) (holding the INA did not divest the district court of

5

jurisdiction over a § 2241 challenge to detention of the petitioner pending deportation).

These sections of the INA limit the Court's jurisdiction here. The Court cannot review the respondents' decision to commence removal proceedings or prevent them from executing the expedited removal order. But as the Court has explained in prior cases, the INA does not divest it of jurisdiction to consider the legal basis of Urra Dorte's detention under principles of habeas corpus. *See Hinojosa Garcia v. Noem*, No. 2:25-cv-879-SPC-NPM, 2025 WL 3041895 (M.D. Fla. Oct. 31, 2025) and *Vasquez Carcamo v. Noem*, 2:25-cv-922-SPC-NPM, 2025 WL 3119263 (M.D. Fla. Nov. 7, 2025).

### D. The Petitioner's Claims

Urra Dorta asserts the respondents are detaining him in violation of the INA and the Fifth Amendment. Count 1 claims his detention violates the INA because he is not eligible for expedited removal, and Count 2 claims the respondents violated his Fifth Amendment due process rights by revoking his parole without notice or an opportunity to be heard. The respondents argue ICE's decision to place Urra Dorta in expedited removal made detention not just lawful, but mandatory.

The Court finds Urra Dorta's due process claim dispositive. The Fifth Amendment guarantees that "[n]o person shall be…deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The clause

6

"applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). It is thus "well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

The Supreme Court has long recognized that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1976). Courts look to three factors when considering what process is due in a given situation: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

All three factors weigh heavily in Urra Dorta's favor. First, his interest in freedom from detention "lies at the heart of the liberty" the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. Second, the risk of erroneous deprivation of that interest is substantial here. When DHS detained Urra Dorta in 2022, a DHS officer found him eligible for supervised release. Since then, Urra Dorta has kept his criminal record clean, he has complied with all

7

terms of release, and he proved he is no flight risk by attending his removal hearing.

ICE issued the order of expedited removal on December 1, 2025, the day of his courthouse arrest, without any new or additional information suggesting Urra Dorta is a threat to public safety or a flight risk. What is more, ICE clearly exceeded its statutory authority when it designated him for expedited removal after revoking his release. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(II) (excluding aliens who have been paroled in the United States from the class eligible for expedited removal). The procedure ICE used did not give Urra Dorta an opportunity to challenge the legal basis for his detention or its necessity.

What is more, the Court recognizes significant value in additional safeguards, like the ones DHS has attempted to circumvent by dismissing his removal proceeding. Those safeguards ensure immigration detention serves its statutory purposes and is used in accordance with the laws enacted by Congress.

Third, the government has not established any legitimate interest in Urra Dorta's continued detention. Immigration detention has two statutory goals: to ensure the noncitizen's appearance at future immigration proceedings and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690. Urra Dorta's detention serves neither purpose. The immigration official who

8

considered his circumstances in 2021 determined that he should be released on recognizance, and he has since remained out of trouble, applied for asylum, and participated in his removal proceedings.

The Court finds that ICE violated Urra Dorta's right to due process by revoking his parole, designating him for expedited removal, and detaining him without reasonable notice and a meaningful opportunity to be heard. *See Make the Road New York v. Noem*, 805 F. Supp. 3d 139, 160, 2025 WL 2494908, at *17 (D.D.C. 2025) ("In short, the expedited removal process hardly affords individuals any opportunity, let alone a 'meaningful' one, to demonstrate that they have been present in the United States for two years."); *see also United States v. Smith*, 30 F.4th 1334, 1338 (11th Cir. 2022) ("the complete denial of the opportunity to be heard on a material issue is a violation of due process which is never harmless error" (cleaned up)).

### E. Conclusion

For the reasons stated above, the Court finds Urra Dorta's detention violates his right to due process under the Fifth Amendment.

Accordingly, it is hereby

**ORDERED**:

Michel Urra Dorta's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED in part**.

1. The respondents shall release Urra Dorta from custody within 24 hours of this Order. The respondents shall facilitate Urra Dorta's transportation from the detention facility by notifying his counsel when and where he can be collected.

2. All other requested relief is **DENIED**.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on February 18, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1